UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    *Plaintiff*, )<br>)<br>  *vs.* )<br>)<br>MICHAEL COLEMAN, )<br>    *Defendant.* ) | 1:15-cr-00064-JMS-DML-1 |

### **ORDER**

Presently pending before the Court is Defendant Michael Coleman's Motion to Suppress. [Filing No. 17.] Mr. Coleman has been indicted with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), and possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). [Filing No. 21.] He seeks to suppress evidence recovered and statements made after what he contends was an illegal search and seizure in violation of his Fourth Amendment rights. As discussed below, Mr. Coleman's motion is denied because he has not identified any constitutional violations.

**I.**
**FINDINGS OF FACT**[1]

On September 24, 2015, the Court held an evidentiary hearing on Mr. Coleman's Motion to Suppress. [Filing No. 17.] The following are the Court's factual findings from the evidence presented at that hearing and submitted with the parties' briefs. In making the findings that follow,

---

[1] To the extent that any findings of fact should be considered conclusions of law, they should be deemed to be such.

the Court considered the testimony and the demeanor of the witnesses who testified at the evidentiary hearing:  Indianapolis Metropolitan Police Department ("IMPD") Officer Shane Foley, IMPD Officer Molly Groce, and Mr. Coleman.

At approximately 4:40 p.m. on February 23, 2015, Officer Foley was in his patrol car on the east side of Indianapolis observing a residence as part of the search for a homicide witness. Mr. Coleman came off of the porch of the house that Officer Foley was observing, and began walking down the middle of the street, despite the fact that there was a sidewalk on either side of the street.  Additionally, although there was snow on the ground, the sidewalks on both sides of the street were clear.[2]

Officer Foley backed his patrol car up, exited his patrol car, stopped Mr. Coleman, and asked him if he had any identification on him.  Mr. Coleman responded that he did not.  Officer Foley then asked Mr. Coleman if he had an Indiana identification card, and Mr. Coleman responded that he did (although not with him).  Officer Foley asked Mr. Coleman for his name and date of birth, and Mr. Coleman replied that his name was DeWayne Coleman and that his date of birth was September 34, 1973.  Mr. Coleman then said his date of birth was September 31, 1930, and then changed his date of birth to September 30, 1973.  Officer Foley requested assistance from another officer, and Officer Groce arrived at the scene and stayed with Mr. Coleman while Officer Foley attempted to confirm Mr. Coleman's identity through the Indiana Bureau of Motor Vehicles database.  Neither Officer Foley nor the control operator with Marion County Sheriff's Department

---

[2] Officer Foley testified that pictures taken on February 24, 2015 – the day after the incident – which show that the sidewalks were clear, accurately depict the condition of the sidewalks on the day of the incident.  While Mr. Coleman testified that the sidewalks were not clear, the Court credits Officer Foley's testimony and the photographic evidence submitted by the Government, [*see* Filing No. 27-2].

("MCSD") Communications could confirm Mr. Coleman's identity with the information that he had provided.

After not being able to confirm Mr. Coleman's identity, Officer Foley confirmed with him that the spelling of his name and his birthdate were correct. Officer Foley then placed Mr. Coleman in handcuffs, in anticipation of arresting him for failure to identify. Officer Foley returned to his patrol car, and Officer Groce asked Mr. Coleman if he had any weapons. Mr. Coleman responded that he had a gun, and Officer Groce retrieved a 45 Taurus handgun, with a magazine with eleven rounds of ammunition and one round in the chamber, from Mr. Coleman's pants pocket. Officer Foley then searched Mr. Coleman, and retrieved two baggies of marijuana in Mr. Coleman's pants pocket and a scale in his front jacket pocket. Mr. Coleman stated "I sell weed. I'm just being honest with you."

Mr. Coleman was placed under arrest for failure to identify. The length of time between Officer Foley's and Mr. Coleman's initial encounter and Mr. Coleman's arrest was approximately five to ten minutes. While transporting Mr. Coleman to IMPD headquarters, Officer Foley learned through MCSD Communications that the handgun had been reported stolen. When they arrived at the IMPD identification office, Mr. Coleman told Officer Foley his correct name and birthdate. Based on the correct identity information, Officer Foley determined that Mr. Foley had prior convictions for: (1) carrying a handgun without a license; (2) carrying a handgun without a license, criminal confinement, and alteration of handgun identifying marks; and (3) aggravated battery.

On April 7, 2015, Mr. Coleman was charged by Indictment with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). [Filing No. 1.] On June 16, 2015, the Government filed a Superseding Indictment which added counts for possession with intent to distribute a controlled substance (marijuana) in violation of 21 U.S.C. § 841(a)(1), and

for possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). [Filing No. 21.] Mr. Coleman now moves to suppress "all evidence and statements gathered as a result of his illegal search and detention." [Filing No. 17 at 3.]

## II.
### THE FOURTH AMENDMENT

The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures…." U.S. Const. amend. IV. Generally, a warrantless search or seizure in the absence of probable cause is unreasonable. *United States v. Slone*, 636 F.3d 845, 848-49 (7th Cir. 2011). When police conduct an unreasonable search or seizure, the exclusionary rule usually vindicates the Fourth Amendment's protections by keeping out the unlawfully obtained evidence. *Id.*

## III.
### DISCUSSION

Mr. Coleman seeks to suppress evidence obtained as a result of what he contends was an "illegal search and detention,"[3] as well as evidence of the inculpatory statements he made. [Filing No. 17 at 3.] The Government opposes Mr. Coleman's motion. [Filing No. 27.]

**A. Evidence Collected After Arrest**

*1. Initial Stop*

Mr. Coleman first contends that Official Foley's initial stop of him while walking down the street was in violation of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

---

[3] Mr. Coleman does not specifically refer to the marijuana or scale that Officer Foley recovered from Mr. Coleman's pants and jacket pockets, likely because the counts relating to those items were added by a superseding indictment filed after the Motion to Suppress was filed. [*See* Filing No. 17; Filing No. 21.] Because Mr. Coleman refers generally to "evidence" in his motion, however, and in the interest of thoroughness, the Court will consider whether all of the evidence obtained during Mr. Coleman's stop and arrest should be suppressed, not just the handgun.

[Filing No. 20 at 3-5.] Mr. Coleman argues that although Officer Foley was investigating the location of a possible female homicide witness, he did not ask Mr. Coleman about the witness until after his arrest. [Filing No. 20 at 3-4.] Mr. Coleman asserts that his walking in the middle of the street "is a threadbare basis for a detention of this character," that there is a question regarding whether Mr. Coleman even violated a City of Indianapolis ordinance[4] in walking down the middle of the street, and that, even if he did, "the ordinance makes no exception for weather, necessity, or total absence of traffic," and there is no indication that Mr. Coleman interrupted traffic or "even interacted with traffic." [Filing No. 20 at 4.] Mr. Coleman also contends that his conduct in walking down the middle of the street was "completely reasonable" because the weather was inclement, and there "was snowfall on the ground." [Filing No. 20 at 4.]

The Government responds that the Indiana Code provision Mr. Coleman violated requires that pedestrians may not walk in a roadway when a sidewalk is available. [Filing No. 27 at 2.] It further points out that additional Indiana Code provisions provide that if a sidewalk is not available, a pedestrian walking along a roadway shall walk only on a shoulder and, if no shoulder is available, as near as practicable to an outside edge of the roadway. [Filing No. 27 at 2-3.] The Government argues that the sidewalks were clear of snow on February 23, 2015, that Mr. Coleman violated Indiana Code provisions by walking in the middle of the street, and that Officer Foley stopped him after observing that violation and for the limited purpose of obtaining information regarding his identity. [Filing No. 27 at 3.] The Government notes that the decision to stop Mr. Coleman was reasonable because Officer Foley observed him walking down the middle of the

---

[4] Mr. Coleman discusses Revised Code of the Consolidated City and County § 441-108(a), which he contends provides that pedestrians must "cross streets only at intersections or at other places that may be designed therefor…." [Filing No. 20 at 4.] The Government points out however, and the Court discusses more fully below, that this is not the provision that Officer Foley observed Mr. Coleman violating. [Filing No. 27 at 3.]

- 5 -

street, in violation of Indiana Code. [Filing No. 27 at 4.] The Government also argues that whether Officer Foley had probable cause to stop Mr. Coleman is judged from an objective standard, and that Officer Foley's reason for being in the area – to locate a potential homicide witness – "has literally no bearing on the Court's inquiry." [Filing No. 27 at 4-5.]

On reply, Mr. Coleman only argues that an evidentiary hearing is necessary to determine the relevant facts. As noted above, the Court held an evidentiary hearing on September 24, 2015.

Not all interactions between police and citizens involve seizures that implicate the Fourth Amendment. *United States v. Hendricks*, 319 F.3d 993, 999 (7th Cir. 2003) (citations omitted). It is well established that there are three categories of police-citizen encounters: (1) where an officer seeks a citizen's voluntary cooperation through non-coercive questioning, which is not a seizure within the meaning of the Fourth Amendment; (2) an investigatory *Terry* stop, which is limited to a brief, non-intrusive detention for which the officer needs specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime; and (3) an arrest, for which the police must have probable cause that a person has committed or is committing a crime. *United States v. Scheets*, 188 F.3d 829, 836 (7th Cir. 1999). Both Mr. Coleman and the Government agree for purposes of the pending motion that the encounter between Mr. Coleman and Officer Foley falls within the second category.

With regard to the second category, an officer may initiate a *Terry* stop when he "has a reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot." *United States v. Patton*, 705 F.3d 734, 737 (7th Cir. 2013) (citing *Terry*, 392 U.S. at 21-22). "A reasonable suspicion requires more than a hunch but less than probable cause and considerably less than preponderance of the evidence." *United States v. Oglesby*, 597 F.3d 891, 894 (7th Cir. 2010) (quotations and citations omitted). Police officers are entitled to rely on their experience

and training in forming a reasonable suspicion. *Id.* (collecting cases). The reasonable suspicion standard is an objective one, *Patton*, 705 F.3d at 738 (citing *Terry*, 392 U.S. at 27), and the Court examines the totality of the circumstances known to the police at the time of the stop to determine whether reasonable suspicion exists, *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003).

Here, Officer Foley observed Mr. Coleman walking down the middle of the street, and Mr. Coleman does not dispute that he was doing so. While Mr. Coleman has argued that the sidewalks were snow-covered, forcing him to walk in the street, the Court has found that the sidewalks were clear of snow on the day of the incident. In any event, even if the sidewalks were snow-covered, Mr. Coleman still violated Indiana Code by not walking as close as practicable to the side of the road. *See* Ind. Code § 9-21-17-14. Based on an objective analysis of the totality of the circumstances, the Court finds that Officer Foley observed Mr. Coleman violating Indiana law by walking in the middle of the street, and that this constituted reasonable suspicion justifying a *Terry* stop.

Mr. Coleman also asserts in conclusory fashion that "the length of the detention and scope of the search were unreasonable." [Filing No. 17 at 2.] But Mr. Coleman does not develop this argument, and did not present any evidence at the September 24, 2015 hearing that this was the case. The Court finds that the duration of the encounter between Officer Foley and Mr. Coleman from the time of the initial stop to the time of his arrest – approximately five to ten minutes – was reasonable. While the Seventh Circuit Court of Appeals has instructed that "[f]or an investigative stop based on reasonable suspicion to pass constitutional muster, the investigation following it must be reasonably related in scope and duration to the circumstances that justified the stop in the first instance so that it is a minimal intrusion on the individual's Fourth Amendment interests," *United States v. Bullock*, 632 F.3d 1004, 1015 (7th Cir. 2011), the five to ten minutes that Mr. Coleman was detained falls well within a reasonable time period.

*2. Arrest for Failure to Identify*

Having found that Officer Foley had reasonable suspicion to initially stop Mr. Coleman, the Court next considers whether Officer Foley had probable cause to arrest Mr. Coleman for failure to identify.

Mr. Coleman argues that even if the stop was justified at its inception, the rest of Officer Foley's interaction with him was "not reasonable in time, scope, or duration." [Filing No. 20 at 4-5.] He argues that he was detained first, then questioned about the homicide witness, and was handcuffed as soon as the MCSD control operator could not find a match for his identity. [Filing No. 20 at 5.] He contends that his arrest for refusal to identify was not warranted because he was not given any alternatives such as returning home to get his identification or providing an address, and that the MCSD control operator and the Bureau of Motor Vehicles database are not "infallible." [Filing No. 20 at 6.] Mr. Coleman also argues that he did not technically violate Indiana's "refusal to provide identification information" statute because he did not refuse to provide his identifying information. [Filing No. 20 at 6.]

The Government responds that Mr. Coleman provided three fictitious dates – the first not appearing on the calendar (September 34, 1973), and the second making him an octogenarian (September 31, 1930). [Filing No. 27 at 5.] It asserts that once Mr. Coleman provided one non-existent and one nonsensical date of birth, Officer Foley had probable cause to arrest him for failure to identify. [Filing No. 27 at 5-6.]

On reply, Mr. Coleman again only addresses the need for an evidentiary hearing.

Officer Foley arrested Mr. Coleman for violation of Indiana's "failure to identify" statute,

which provides that:

> A person who knowingly or intentionally refuses to provide either the person's:
>
> (1) name, address, and date of birth; or
>
> (2) driver's license, if in the person's possession;
>
> to a law enforcement officer who has stopped the person for an infraction or ordinance violation commits a Class C misdemeanor.

Ind. Code 34-28-5-3.5. *See also* Ind. Code. § 34-28-5-3 ("Whenever a law enforcement officer believes in good faith that a person has committed an infraction or ordinance violation, the law enforcement officer may detain that person for a time sufficient to: (1) inform the person of the allegation; (2) obtain the person's (A) name, address, and date of birth; or (B) driver's license, if in the person's possession; and (3) allow the person to execute a notice to appear").

When Officer Foley stopped Mr. Coleman for violating Indiana Code by walking in the middle of the street, he was entitled to detain Mr. Coleman to obtain his identification under Ind. Code § 34-28-5-3. *See also State v. Harris*, 702 N.E.2d 722, 726 (Ind. App. 1998) (officer was justified in detaining individual and requesting that he produce driver's license or provide his name and date of birth, after officer observed individual violating an Indiana Code provision while driving).

Upon being questioned, Mr. Coleman provided Officer Foley with two clearly fictitious dates of birth – one that included the 34th day of September, and one that would make Mr. Coleman in his eighties (Mr. Coleman was forty-one years old on the day of the incident). It is reasonable that these two dates would cause Officer Foley to think that Mr. Coleman was not providing him with correct information. Mr. Coleman then provided a third date of birth which also proved to be false, but could potentially have been correct. Officer Foley attempted himself to confirm the name and last date of birth Mr. Coleman had supplied, and also had MCSD Communications

work to confirm the information. Only after multiple attempts, and after again confirming the information with Mr. Coleman, did Officer Foley place Mr. Coleman in handcuffs for failure to identify. The two fictitious dates of birth, coupled with the multiple attempts to confirm the final name and date of birth Mr. Coleman supplied, provided Officer Foley with probable cause to arrest Mr. Coleman for failure to identify himself.[5]

In sum, the Court concludes that based on an objective analysis of the totality of the circumstances, Officer Foley had reasonable suspicion to initially stop Mr. Coleman because he observed him violating Indiana Code by walking down the middle of the street. After the initial stop, Officer Foley also had probable cause to arrest Mr. Coleman for failure to identify because Mr. Coleman first provided two obviously fictitious dates of birth, then a third date of birth that could not be matched with the name Mr. Coleman had provided either by Officer Foley or by MCSD Communications. Accordingly, there was no Fourth Amendment violation, and Mr. Coleman presents no reason to suppress the subsequently discovered evidence, including the handgun, ammunition, marijuana, and scale.

### B. Inculpatory Statements

Mr. Coleman also seeks suppression of "incriminating statements" obtained during his interaction with Officer Foley. [Filing No. 17 at 2.] The only potentially incriminating statement Mr. Coleman made was to state, after his arrest, that "I sell weed. I'm just being honest with you," as Officer Foley searched his jacket pocket. The statement was voluntary and not in response to a question from Officer Foley. In any event, while this statement was made before Mr. Coleman

---

[5] The Court rejects Mr. Coleman's argument that since he did not *refuse* to provide his name and date of birth, he did not violate Indiana Code § 34-28-5-3.5. [Filing No. 20 at 6.] Mr. Coleman provides no legal authority for his argument, and the Court finds that implied in § 34-28-5-3.5 is an obligation to provide correct identifying information. If an individual could comply with § 34-28-5-3.5 by providing false information, the statute would be meaningless.

had received his *Miranda* warnings, that is of no moment. It was reasonable for Officers Foley and Groce to believe that any questioning (and subsequent searches) of Mr. Foley was necessary to ensure their safety. *See United States v. Are*, 590 F.3d 499, 505 (7th Cir. 2009) (under public safety exception, police officers are permitted to question individual without first giving *Miranda* warnings if "they reasonably believe it is necessary to secure their own safety or the safety of the public") (citations and internal quotations omitted). Mr. Coleman has not identified any Fourth Amendment violation that would warrant suppression of inculpatory statements.

## IV.
### CONCLUSION

For the foregoing reasons, Mr. Coleman's Motion to Suppress, [Filing No. 17], is **DE-NIED**.

Date: October 9, 2015

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**